E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BYRON R. TUYAY (Cal. Bar No. 308049)
Assistant United States Attorney
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6230
    Facsimile: (951) 276-6202
    E-mail:   byron.tuyay@usdoj.gov

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
LAUREN ARCHER
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW
    Washington, DC 20530
    Telephone:   (202) 538-3859
    Facsimile:   (202) 514-0152
    E-mail:   lauren.archer2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**11/30/2022**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____AP_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>SHARIEF DEONA MCDOWELL,<br><br>        Defendant. | CR No. 5:22-cr-00274-AB<br><br>PLEA AGREEMENT FOR DEFENDANT<br>SHARIEF DEONA MCDOWELL |

    1.   This constitutes the plea agreement between SHARIEF DEONA MCDOWELL ("defendant"), the United States Attorney's Office for the Central District of California (the "USAO") and the U.S. Department of Justice, Criminal Division, Fraud Section ("Fraud Section") in the investigation of defendant's fraudulent scheme to obtain and

1  misappropriate property through Presidential Investment Inc., LLC.

2  This agreement is limited to the USAO and Fraud Section (together

3  referred herein as the "Government") and cannot bind any other

4  federal, state, local, or foreign prosecuting, enforcement,

5  administrative, or regulatory authorities.

6  <u>DEFENDANT'S OBLIGATIONS</u>

7      2.   Defendant agrees to:

8          a.   Give up the right to indictment by a grand jury and,

9  at the earliest opportunity requested by the Government and provided

10 by the Court, appear and plead guilty to a one-count information in

11 the form attached to this agreement as Exhibit A or a substantially

12 similar form, which charges defendant with Wire Fraud in violation of

13 18 U.S.C. § 1343.

14         b.   Not contest facts agreed to in this agreement.

15         c.   Abide by all agreements regarding sentencing contained

16 in this agreement.

17         d.   Appear for all court appearances, surrender as ordered

18 for service of sentence, obey all conditions of any bond, and obey

19 any other ongoing court order in this matter.

20         e.   Not commit any crime or any act constituting

21 obstruction of justice; however, offenses that would be excluded for

22 sentencing purposes under United States Sentencing Guidelines

23 ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the

24 scope of this agreement.

25         f.   Be truthful at all times with the United States

26 Probation and Pretrial Services Office and the Court.

27         g.   Pay the applicable special assessment at least two

28 weeks before the time of sentencing unless defendant has demonstrated

1  a lack of ability to pay such assessment.  The parties will base the

2  determination of the lack of ability to pay such assessment on the

3  information in defendant's Presentence Investigation Report.  If

4  defendant has not demonstrated a lack of ability to pay such

5  assessment, payment is made by issuing payment in the form of

6  certified check, business check, or money order (no personal checks)

7  made payable to "Clerk, U.S. District Court," and identify the case

8  name and number on the "memo" line.  All payments shall be delivered

9  to:

10            United States District Court

11            Fiscal Department

12            255 East Temple Street, Room 1178

13            Los Angeles, California 90012.

14       h.    Pay restitution to victims for the losses they

15  sustained as a result of the defendant's conduct.  Defendant

16  understands that the total amount of restitution in this case is

17  approximately $2,446,093.96, payable to the victims identified in

18  Attachment B.

19       i.    Complete the Financial Disclosure Statement on a form

20  provided by the USAO and, within 30 days of defendant's entry of a

21  guilty plea, deliver the signed and dated statement, along with all

22  of the documents requested therein, to the Government by either email

23  at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

24  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

25  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

26  criminal debt shall be assessed based on the completed Financial

27  Disclosure Statement and all required supporting documents, as well

28  as other relevant information relating to ability to pay.

1    j.    Authorize the Government to obtain a credit report
2 upon returning a signed copy of this plea agreement.

3    k.    Consent to the Government inspecting and copying all
4 of defendant's financial documents and financial information held by
5 the United States Probation and Pretrial Services Office.

6    FORFEITURE AND FINANCIAL ACCOUNTABILITY

7    3.    Defendant further agrees:

8    a.    To forfeit all right, title, and interest in and to
9 any and all monies, properties, and/or assets of any kind, derived
10 from or acquired as a result of, or used to facilitate the commission
11 of, or involved in the illegal activity to which defendant is
12 pleading guilty, (collectively, the "Forfeitable Property").

13    b.    To the Court's entry of an order of forfeiture at or
14 before sentencing with respect to the Forfeitable Property and to the
15 forfeiture of the property.

16    c.    To take whatever steps are necessary to pass to the
17 United States clear title to the Forfeitable Property, including,
18 without limitation, the execution of a consent decree of forfeiture
19 and the completing of any other legal documents required for the
20 transfer of title to the United States.

21    d.    Not to contest any administrative forfeiture
22 proceedings or civil judicial proceedings commenced against the
23 Forfeitable Property.  If defendant submitted a claim and/or petition
24 for remission for all or part of the Forfeitable Property on behalf
25 of himself or any other individual or entity, defendant shall and
26 hereby does withdraw any such claims or petitions, and further agrees
27 to waive any right she may have to seek remission or mitigation of

28

the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

h.   To fill out and deliver to the Prosecuting Agencies a completed financial statement listing defendant's assets on a form provided by the Prosecuting Agencies.

i.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, costs, or other penalty the Court may impose.

j.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

k.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges

1  that the forfeiture of the Forfeitable Property is part of the

2  sentence that may be imposed in this case and waives any failure by

3  the Court to advise defendant of this, pursuant to Federal Rule of

4  Criminal Procedure 11(b)(1)(J), at the time the Court accepts

5  defendant's guilty plea.

6                    THE GOVERNMENT'S OBLIGATIONS

7       4.   The Government agrees to:

8            a.   Not contest facts agreed to in this agreement.

9            b.   Abide by all agreements regarding sentencing contained

10 in this agreement.

11           c.   At the time of sentencing, provided that defendant

12 demonstrates an acceptance of responsibility for the offense up to

13 and including the time of sentencing, recommend a two-level reduction

14 in the applicable Sentencing Guidelines offense level, pursuant to

15 U.S.S.G. § 3E1.1, and, if appropriate, recommend an additional one-

16 level reduction under that section.

17           d.   Recommend that defendant be sentenced to a term of

18 imprisonment no higher than the low end of the applicable Sentencing

19 Guidelines range, provided that the offense level used by the Court

20 to determine that range is 24 or higher and provided that the Court

21 does not depart downward in offense level or criminal history

22 category.  For purposes of this agreement, the low end of the

23 Sentencing Guidelines range is that defined by the Sentencing Table

24 in U.S.S.G. Chapter 5, Part A , without regard to reductions in the

25 term of imprisonment that may be permissible through the substitution

26 of community confinement or home detention as a result of the offense

27 level falling within Zone B or Zone C of the Sentencing Table.

28

## NATURE OF THE OFFENSE

e.   Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan to obtain money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts;; (2) the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for defendant's compliance with her obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In

particular, defendant agrees that the Court may order restitution to the victims identified in Attachment B, for the losses suffered by each of those victims in an amount no less than that listed in Attachment B for each victim, and as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $2,446,093.96, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation,

8

1  parole, or supervised release in another case and suspension or
2  revocation of a professional license.   Defendant understands that
3  unanticipated collateral consequences will not serve as grounds to
4  withdraw defendant's guilty plea.

5      9.    Defendant understands that, if defendant is not a United
6  States citizen, the felony conviction in this case may subject
7  defendant to: removal, also known as deportation, which may, under
8  some circumstances, be mandatory; denial of citizenship; and denial
9  of admission to the United States in the future.   The Court cannot,
10 and defendant's attorney also may not be able to, advise defendant
11 fully regarding the immigration consequences of the felony conviction
12 in this case.   Defendant understands that unexpected immigration
13 consequences will not serve as grounds to withdraw defendant's guilty
14 plea.

15                            FACTUAL BASIS

16     10.   Defendant admits that defendant is, in fact, guilty of the
17 offense to which defendant is agreeing to plead guilty.   Defendant
18 and the Government agree to the statement of facts provided below and
19 agree that this statement of facts is sufficient to support a plea of
20 guilty to the charge described in this agreement and to establish the
21 Sentencing Guidelines factors set forth in paragraph 14 below but is
22 not meant to be a complete recitation of all facts relevant to the
23 underlying criminal conduct or all facts known to either party that
24 relate to that conduct.

25     Beginning in or around October 2018 and continuing through at
26 least March 2022, in Riverside and Orange Counties, within the
27 Central District of California, and elsewhere, defendant knowingly
28 and with intent to defraud, devised, participated in, and executed a

1  scheme to defraud investors and to obtain investors' money by means

2  of material false and fraudulent pretenses, representations, and

3  promises.

4      As part of the fraudulent scheme, defendant started a purported

5  investment company called Presidential Investments Inc LLC

6  ("Presidential Investments").  Defendant operated and controlled

7  Presidential Investments and directed others to open business bank

8  accounts held in Presidential Investments' name at Wells Fargo Bank,

9  Bank of America N.A., and U.S. Bank.  Defendant had access to and

10  control of Presidential Investments' business bank accounts,

11  including an account ending in 2671 at Bank of America ("2671

12  Account").

13      Defendant knowingly solicited money from victims by falsely

14  representing that she, through Presidential Investments, would use

15  the victims' money to purchase commodity futures and options

16  contracts on their behalf.  Defendant instructed victims to

17  electronically transfer their money to Presidential Investments.

18  Contrary to defendant's representations, however, and as defendant

19  well knew at the time she made these representations, defendant did

20  not use the investors' money to purchase commodity futures and

21  options on their behalf.  Instead, defendant misappropriated

22  investors' money for purposes she did not disclose to them.

23  Defendant used victims' money to pay for personal expenses and gifts

24  for third parties, and to make payments to other investors, which

25  defendant falsely represented were disbursements from the recipients'

26  own investment accounts.

27      To execute the scheme, defendant fabricated trade confirmations

28  and account statements, which she sent to investors via interstate

1   wire communications, namely e-mails, to deceive the investors into

2   thinking that she executed trades on their behalf and that their

3   investments were generating returns.

4        For example, no later than October 13, 2020, defendant

5   represented to Victim 1 that defendant would invest Victim 1's money

6   through Presidential Investments.  Defendant knew that her

7   representations to Victim 1 were false and fraudulent because

8   Presidential Investments did not actually trade commodity futures and

9   options, and defendant intended to misappropriate Victim 1's funds.

10  Defendant made these and other false representations to Victim 1,

11  knowing that they were material, to induce Victim 1 to wire funds to

12  the 2671 Account, which defendant controlled.  Defendant subsequently

13  sent an email to Victim 1 with instructions on how to wire funds to

14  the 2761 Account.

15       On or about October 13, 2022, defendant caused Victim 1 to

16  transmit by means of wire communications in interstate commerce,

17  $40,000, from Victim 1's personal Bank of America account ending in

18  8861 to the 2761 Account at a Bank of America branch location in La

19  Palma, California.  The wire transfer was processed through a Bank of

20  America server in Texas or Virginia.

21       Defendant admits and agrees that she intentionally defrauded at

22  least 28 investors, and as a result of the scheme, defendant caused

23  losses to investors of approximately $2,678,768.96.

24       Defendant committed this fraud in violation of a prior judicial

25  order, which permanently enjoined defendant from directly or

26  indirectly engaging in conduct, including, but not limited to,

27  cheating, defrauding, or deceiving any other person in connection

28  with an offer to enter into, the entry into, the confirmation of the

execution of, or the maintenance of, any commodity option

transaction.  *See* Attachment C, Consent Order for Permanent

Injunction at 8, *CFTC v. 20/20 Trading Co., Inc.*, *et al.*, No. 8:11-

cv-643-JST (C.D. Cal. Sept. 24, 2012), ECF No. 89.

<u>SENTENCING FACTORS</u>

11.  Defendant understands that in determining defendant's

sentence the Court is required to calculate the applicable Sentencing

Guidelines range and to consider that range, possible departures

under the Sentencing Guidelines, and the other sentencing factors set

forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have

any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crime of

conviction.

12.  Defendant and the Government agree to the following

applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(2) |
| Loss Amount is between $1.5M and $3.5M: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| Offense Involved More Than 10 Victims: | +2 | U.S.S.G. §2B1.1(b)(2)(A)(i) |
| Violation of Prior Injunction | +2 | U.S.S.G. §2B1.1(b)(9) |

13.  Defendant and the Government reserve the right to argue

that additional specific offense characteristics, adjustments, and

departures under the Sentencing Guidelines are appropriate.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the Government reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

17. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

18. Defendant agrees that, provided the Court imposes a total term of imprisonment within the maximum set by statute for the crime of conviction, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence; (e) the amount and terms of any restitution order, provided it requires payment of no more than $2,446,093.96; (f) the term of probation or supervised release imposed by the Court; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing

14

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   The Government agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above, and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 24 and the criminal history calculated by the Court, the Government gives up its right to appeal any portion of the sentence, with the exception that the Government reserves the right to appeal the amount of restitution ordered if that amount is less than $2,446,093.96, the actual losses suffered by the victims identified in Attachment B.

20.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

15

involuntary, then the Government will be relieved of all of its obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the Government may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the Government to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the Government in writing.  If the Government declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the Government will be relieved of all its obligations under this agreement.

24.   Following the Court's finding of a knowing breach of this agreement by defendant, should the Government choose to pursue any charge that was not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

16

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
## OFFICE NOT PARTIES

25.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the Government's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.   Defendant understands that both defendant and the Government are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines

17

calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the Government and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the Government's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the Government and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney


_____                    11/23/2022
BYRON R. TUYAY                              Date
Assistant United States Attorney


LAUREN ARCHER
Trial Attorney, DOJ Fraud Section


_____                    11/20/22
SHARIEF MCDOWELL                            Date
Defendant

_____                    11/20/22
CHARLES EATON                               Date
Deputy Federal Public Defender
Attorney for Defendant
SHARIEF MCDOWELL

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     11/20/22
SHARIEF MCDOWELL                     Date
Defendant

1            CERTIFICATION OF DEFENDANT'S ATTORNEY

2        I am SHARIEF MCDOWELL's attorney.  I have carefully and

3   thoroughly discussed every part of this agreement with my client.

4   Further, I have fully advised my client of her rights, of possible

5   pretrial motions that might be filed, of possible defenses that might

6   be asserted either prior to or at trial, of the sentencing factors

7   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  a guilty plea pursuant to this agreement.

16

17  _____          __11/20/22_____
    CHARLES EATON                               Date
18  Deputy Federal Public Defender
    Attorney for Defendant
19  SHARIEF MCDOWELL

20

21

22

23

24

25

26

27

28

                              21

# ATTACHMENT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

SHARIEF DEONA MCDOWELL,

       Defendant.

I N F O R M A T I O N

[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture]

The United States Attorney charges:

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

    1.   At times relevant to this Information:

       a.   Defendant SHARIEF DEONA MCDOWELL ("defendant") was a resident of Loma Linda, California.

       b.   Defendant MCDOWELL operated and controlled Presidential Investments Inc. LLC ("Presidential Investments"), a company purporting to invest and trade in commodity futures and options contracts.

       c.   Defendant MCDOWELL directed a nominee to register Presidential Investments as a limited liability company incorporated

in the State of Nevada.  Defendant MCDOWELL claimed to be the owner of Presidential Investments.

d.   Defendant MCDOWELL directed nominees to open Presidential Investments' business accounts at BBVA Compass Bank, Wells Fargo Bank, Bank of America N.A., and U.S. Bank.

e.   Defendant MCDOWELL maintained access to and control of Presidential Investments' bank accounts, including an account ending in 2671 at Bank of America held in the name of Presidential Investments ("2671 Account").

f.   Victim 1 was a resident of Cypress, California, Orange County, within the Central District of California.

g.   Victim 1 had a bank account at Bank of America ending in 8861 ("8861 Account").

B.   THE SCHEME TO DEFRAUD

2.   Beginning in or around October 2018 and continuing through in or around March 2022, in San Bernardino and Orange Counties, within the Central District of California, and elsewhere, defendant MCDOWELL, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors including Victim 1, as to material matters, and to obtain money and property from such investors, by means of materially false and fraudulent pretenses, representations, and promises.

3.   The fraudulent scheme operated and was carried out, in substance, as follows:

a.   Defendant MCDOWELL solicited money from people by falsely representing that she would use their money to purchase

2

commodity futures and options contracts through her company, Presidential Investments.

b.    Under that false pretense, defendant MCDOWELL instructed people to electronically transfer their money to a Presidential Investments bank account.

c.    Contrary to defendant MCDOWELL's representations, which defendant MCDOWELL well knew were false at the time they were made, defendant MCDOWELL did not trade commodity futures and options contracts.

d.    Instead, defendant MCDOWELL knowingly misappropriated the money for purposes she did not disclose to the investors.

e.    Defendant MCDOWELL used investors' money to pay for personal expenses, travel, and gifts.

f.    Defendant MCDOWELL also used investors' money to make payments to other investors, which she falsely represented were disbursements from the investors' own investment accounts.

g.    As a result of the scheme to defraud, defendant MCDOWELL caused investors a total of approximately $2.6 million in losses.

C.    <u>USE OF AN INTERSTATE WIRE</u>

4.    On or about October 13, 2020, in Orange County, within the Central District of California, for the purpose of executing the above-described scheme to defraud, namely, the misuse and misappropriation of investor funds fraudulently obtained in the name of Presidential Investments, defendant MCDOWELL caused Victim 1 to transmit, by means of wire communications in interstate commerce, approximately $40,000, from the 8861 account held in Victim 1's name,

to the 2671 Bank of America account held in the name of Presidential

Investments.

1

                           FORFEITURE ALLEGATION

2

                  [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3     1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4     Procedure, notice is hereby given that the United States of America

5     will seek forfeiture as part of any sentence, pursuant to Title 18,

6     United States Code, Section 981(a)(1)(C) and Title 28, United States

7     Code, Section 2461(c), in the event of the defendant MCDOWELL's

8     conviction of the offense set forth in the sole count of this

9     Information.

10        2.    Defendant MCDOWELL, if so convicted, shall forfeit to the

11    United States of America the following:

12             a.    All right, title, and interest in any and all

13    property, real or personal, constituting, or derived from, any

14    proceeds traceable to the offense; and

15             b.    To the extent such property is not available for

16    forfeiture, a sum of money equal to the total value of the property

17    described in subparagraph (a).

18        3.    Pursuant to Title 21, United States Code, Section 853(p),

19    as incorporated by Title 28, United States Code, Section 2461(c),

20    defendant MCDOWELL, if so convicted, shall forfeit substitute

21    property, up to the value of the property described in the preceding

22    paragraph if, as the result of any act or omission of defendant

23    MCDOWELL, the property described in the preceding paragraph or any

24    portion thereof (a) cannot be located upon the exercise of due

25    diligence; (b) has been transferred, sold to, or deposited with a

26    third party; (c) has been placed beyond the jurisdiction of the

27    court;(d) has been substantially diminished in value; or (e) has been

28

                                      5

1  commingled with other property that cannot be divided without

2  difficulty.

3                                          E. MARTIN ESTRADA
                                           United States Attorney
4

5
                                           SCOTT M. GARRINGER
6                                          Assistant United States Attorney
                                           Chief, Criminal Division
7
                                           SEAN D. PETERSON
8                                          Assistant United States Attorney
                                           Chief, Riverside Branch Office
9
                                           GLENN S. LEON
10                                         Chief, Fraud Section
                                           Criminal Division
11                                         United States Department of
                                             Justice
12
                                           BYRON R. TUYAY
13                                         Assistant United States Attorney
                                           Riverside Branch Office
14
                                           LAUREN ARCHER
15                                         Trial Attorney, Fraud Section
                                           Criminal Division
16                                         United States Department of
                                           Justice
17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B

ATTACHMENT B

| Victim | Investments | Payouts | Actual Losses |
|---|---:|---:|---:|
| A.I. & A.A. | $20,000 | $18,150 | $1,850 |
| A.J. | $20,000 | $0.00 | $20,000 |
| A.R | $130,000 | $87,073 | $42,927 |
| B.C. | $20,000 | $20,000 | n/a |
| C.M. | $60,000 | $0.00 | $60,000 |
| D.D. | $20,000 | $0.00 | $20,000 |
| G.Y. | $29,970 | $0.00 | $29,970 |
| J.B. | $137,388.30 | $0.00 | $137,388.30 |
| J.S. & R.S. | $220,000 | $0.00 | $220,000 |
| J.H. | $76,960 | $0.00 | $76,960 |
| J.W. | $152,500 | $2,136 | $150,364 |
| J.B. ("Victim 1"), B.B., & J.M. | $300,000 | $0.00 | $300,000 |
| J.R. | $70,000 | $416 | $69,584 |
| K.G. | $39,960 | $7,000 | $32,960 |
| L.K. | $200,000 | $0.00 | $200,000 |
| M.T. | $30,000 | $9,500.00 | $20,500 |
| M.P & D.G. Medicine | $150,000 | $0.00 | $150,000 |
| N.A. | $40,000 | $0.00 | $40,000 |
| P.C. | $15,000 | $0.00 | $15,000 |
| R.M. | $94,690.66 | $4,000 | $90,690.66 |
| S.G., E.G., & ESG Holdings | $70,000 | $205,000 | n/a |
| S.E. | $40,300 | $5,000 | $35,300 |
| S.T. & A.T. | $594,000 | $400 | $593,600 |
| T.F. & Highwire Investigations | $0.00 | $222,458 | n/a |
| T.M. | $33,000 | $0.00 | $33,000 |
| V.B. | $100,000 | $9,000 | $91,000 |
| Z.P. | $15,000 | $0.00 | $15,000 |
| **Totals** | **$2,678,768.96** | **$590,133.00** | **$2,446,093.96** |

# ATTACHMENT C

Jennifer E. Smiley, Illinois ARDC No. 6275940
(jsmiley@cftc.gov)
Carlin R. Metzger, Illinois ARDC No. 6275516
(cmetzger@cftc.gov)
Joseph A. Konizeski, Louisiana Bar No. 25132
(jkonizeski@cftc.gov)
U.S. Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, IL  60661
Telephone:  (312) 596-0530 (Smiley)
Telephone:  (312) 596-0536 (Metzger)
Telephone:  (312) 596-0546 (Konizeski)
Facsimile:  (312) 596-0714
Attorneys for Plaintiff

Kent Kawakami, CA Bar No. 149803
(kent.kawakami@usdoj.gov)
Assistant United States Attorney
United States Attorney's Office
Central District of California – Civil Division
300 North Los Angeles Street Room 7516
Los Angeles, CA  90012
Telephone:  (213) 894-4858
Facsimile:  (213) 894-2380
Local Counsel

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) No: SACV 11-00643 JST (FMOx) )  ) **CONSENT ORDER** |
| Plaintiff, | ) **FOR PERMANENT** ) **INJUNCTION, CIVIL** |
| v. | ) **MONETARY PENALTY, AND** ) **OTHER EQUITABLE RELIEF** |
| 20/20 TRADING COMPANY, INC., et al., | ) **AGAINST DEFENDANTS** )  ) |
| Defendants. | ) |

1

## I.   INTRODUCTION

On April 26, 2011, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a civil lawsuit in the United States District Court for the Central District of California , Southern Division, Case Number SACV-11-00643 JST (FMOx) (the "Complaint") against 20/20 Trading Company, Inc., 20/20 Precious Metals, Inc., Bharat Adatia, Sharief D. McDowell, and Todd Krejci (collectively, "Defendants"), seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2006) and Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).  Specifically, the Complaint alleged the following claims:

   a. Count I - Violation of 7 U.S.C. § 6(c)b) and 17 C.F.R. § 33.10 Against 20/20 Trading Company, Inc., Bharat Adatia and Sharief D. McDowell;

   b. Count II – Violation of 17 C.F.R. § 166.3 against 20/20 Trading Company, Inc. and Bharat Adatia;

   c. Count III – Violation of 7 U.S.C. § 23 and 17 C.F.R. 31.3 against 20/20 Precious Metals, Inc., Bahrat Adatia, Sharief D. McDowell and Todd Krejci; and

d.  Count IV – Violation of 7 U.S.C. § 23(a)  against 20/20 Precious

Metals, Inc., Bahrat Adatia, Sharief  D. McDowell and Todd Krejci

On July 15, 2011, the Court granted the Defendants' Motion to Dismiss

Counts III and IV of the Commission's Complaint, holding that the Commission

lacked jurisdiction over the conduct implicated in those Counts and dismissing

20/20 Precious Metals, Inc. and Todd Krejci from the Complaint altogether.

Counts I against 20/20 Trading Company, Inc. Inc., Bharat Adatia and Sharief D.

McDowell and Count II against 20/20 Trading Company, Inc. Inc. and Bharat

Adatia remain pending before the Court.  For the remainder of this Consent Order

20/20 Trading Company, Inc. Inc., and Bharat Adatia and Sharief D. McDowell

shall collectively be referred to as the "Settling Defendants".

## II.   CONSENTS AND AGREEMENTS

To effect settlement of this matter without a trial on the merits or any

further judicial proceedings, the Settling Defendants and 20/20 Precious Metals,

Inc:

1.     Consent to entry of this Consent Order of Permanent Injunction, Civil

Monetary Penalty, and Equitable Relief Against Defendants ("Consent Order");

2.     Affirm that they have read and agreed to this Consent Order

voluntarily, and that no promise, other than as specifically contained herein, or

threat has been made by the Commission or any member, officer, agent, or

representative thereof, or by any other person, to induce consent to this Consent Order;

     3.    Acknowledge service of the summons and Complaint;

     4.    Admit the jurisdiction of this Court over them and the subject matter of Counts I and II of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

     5.    Admit the jurisdiction of the Commission over the conduct and transactions at issue in Counts I and II of this action pursuant to the Act, 7 U.S.C. §§ 1 *et seq.*;

     6.    Admit that venue properly lies with this Court pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1;

     7.    Waive:

        a.    The entry of findings of fact and conclusions of law;

        b.    any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. § 148.1, *et seq.* (2011), relating to, or arising from, this action, including Counts III and IV previously dismissed from this action;

c.    any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-207 (2007), relating to, or arising from, this action, including Counts III and IV previously dismissed from this action;

d.    any and all claims of Double Jeopardy based upon the institution of this proceeding or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

e.    any and all rights of appeal in this action;

8.    Agree that the Commission shall bear no liability for any costs, fees, or expenses connected to or in any way related to the 20/20 Precious Metals, Inc. receivership that was in place from April 27, 2011 through June 7, 2011 (the "Receivership"). The Settling Defendants and 20/20 Precious Metals, Inc. shall determine amongst themselves their individual liability for any Receivership costs, fees, or expenses and the Settling Defendants and 20/20 Precious Metals, Inc. agree not to seek any contribution or indemnification from the CFTC for any such costs, fees, or expenses;

Case 5:22-cr-00274-AB Document 7 Filed 11/30/22 Page 37 of 48 Page ID #:56
Case 5:22-cv-00434-JGB-PMRC Document 89 Filed 07/24/22 Page 37 of 48 Page ID
#:1807

9.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this case, even if the Settling Defendants now or in the future reside outside the jurisdiction;

10.     Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

11.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in Counts I and II of the Complaint, or creating, or tending to create, the impression that Counts I and II of the Complaint and/or this Consent Order are without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  The Settling Defendants and 20/20 Precious Metals shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

12.     By consenting to the entry of this Consent Order, the Settling Defendants neither admit nor deny the allegations of the Complaint, except as to

jurisdiction over Counts I and II and venue, which they admit. Further, Defendants 20/20 Trading, Adatia, and McDowell agree and intend that, until they pay their respective Section IV.1 CMP Obligation, the allegations contained in Counts I and II of the Complaint shall be taken as true and correct and be given preclusive effect, without further proof, as to any of them that have not paid their CMP Obligation, in the course of any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendants 20/20 Trading, Adatia, and/or McDowell;

13. Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 46 of Part VI this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

14. Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against any of the Settling Defendants and/or 20/20 Precious Metals, Inc. in any other proceeding.


## III.   ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

15.     Pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1,

Defendants 20/20 Trading Company, Adatia and McDowell are permanently

restrained, enjoined and prohibited from directly or indirectly:

  a.   Engaging in any conduct in violation of Section 4c(b), 7 U.S.C.
       6c(b) (2006), and Regulation 33.10, 17 C.F.R. § 33.10 (2011),
       including, but not limited to, cheating, defrauding, or
       attempting to cheat or defraud, or deceiving or attempting to
       deceive any other person in connection with an offer to enter
       into, the entry into, the confirmation of the execution of, or the
       maintenance of, any commodity option transaction;

  b.   Engaging in any conduct in violation of Regulation 166.3,
       17 C.F.R. § 166.3 (2011), including, but not limited to, failing
       to diligently supervise the handling of all commodity interest
       accounts carried, operated, advised, or introduced by a
       registrant and all other activities of its partners, officers,
       employees, and agents relating to its business as a Commission
       registrant.

## IV.     ORDER OF CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED THAT:**

16.     Defendants 20/20 Trading Company, Adatia and McDowell shall

each pay a civil monetary penalty ("CMP Obligation"), plus post-judgment

interest within thirty (30) days of the date of the entry of this Consent Order.

Defendant 20/20 Trading shall pay a civil monetary penalty of one-hundred

twenty thousand dollars ($120,000); Defendant Adatia shall pay a civil monetary

penalty of ten thousand dollars ($10,000); and Defendant McDowell shall pay a

civil monetary penalty of ten thousand dollars ($10,000).  Post-judgment interest

shall accrue on each defendant's respective CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

17.     Defendants 20/20 Trading Company, Adatia and McDowell shall pay their respective CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the United States Commodity Futures Trading Commission and sent to the address below:

> United States Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivable – AMZ 340
> E-mail Box:  9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Boulevard
> Oklahoma City, Oklahoma 73169
> Telephone: (405) 954-5644

If the payment is to be made by electronic funds transfer, Defendants 20/20 Trading Company, Adatia and McDowell shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany the payment of the CMP Obligation with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Defendants shall simultaneously

transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

18.    Partial Satisfaction:  Any acceptance by the CFTC of partial payment of any Settling Defendant's CMP Obligation shall not be deemed a waiver of the Settling Defendants' obligation to make further payments pursuant to this Consent Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

## V.    MISCELLANEOUS PROVISIONS

19.    <u>Notices</u>:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Director of the Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street NW
Washington, D.C.  20581

Notice to 20/20 Trading Company, Inc., 20/20 Precious Metals, Inc. and/or Bharat Adatia:

Michael S. Winsten, Esq.
WINSTEN LAW GROUP

27201 Puerta Real, Suite 465
Mission Viejo. California 92691
Telephone: 949.429.3400
Telecopier: 949.429.3500
e-mail: mike@winsten.com
(or his then current address of record with the State Bar of California)

and

Harris L. Kay, Esq.
HENDERSON & LYMAN
175 West Jackson Boulevard, Suite 240
Chicago, Illinois 60604
Telephone: 312.986.6960
Telecopier: 312.986.6961
e-mail: hkay@henderson-lyman.com
(or his then current address of record with the State Bar of Illinois)

Notice to Ms. McDowell:

Sharief D. McDowell
25609 Prospect Avenue
Loma Linda, CA 92354
Telephone: 909.252.6733

With copies to Mr. Winsten and Mr. Kay

All such notices to the Commission shall reference the name and docket number

of this action.

20.    Change of Address/Phone:  Until such time as Defendants 20/20

Trading Company, Adatia and McDowell satisfy in full their respective CMP

Obligation as set forth in this Consent Order, Defendants 20/20 Trading

Company, Adatia and McDowell shall provide written notice to the Commission

11

by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

21.   <u>Entire Agreements and Amendments</u>:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

22.   <u>Invalidation</u>:  If any provision of this Consent Order or the application of any provision or circumstance is held invalid, the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

23.   <u>Waiver</u>:  The failure of any party to this Consent Order at any time or times to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

24.   <u>Continuing Jurisdiction of this Court</u>:  This Court shall retain jurisdiction over this action to ensure compliance with this Consent Order and for

all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

25.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon the Settling Defendants, their officers, agents, servants, employees, and attorneys, and upon other persons who are in active concert or participation with the Settling Defendants and who receives actual notice of this Consent Order, by personal service, email, facsimile, or otherwise.

26.    Authority:  Bharat Adatia hereby warrants that he is the president and director of both 20/20 Trading and 20/20 Metals, and that this Consent Order has been duly authorized by 20/20 Trading and 20/20 Metals and he has been duly empowered to sign and submit this Consent Order on behalf of 20/20 Trading and 20/20 Metals.

27.    Counterparts and Facsimile Execution:  This agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile, email, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that

is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

28.     The Settling Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent order.

**IT IS SO ORDERED.**

Date:  July 24, 2012

_____
United States District Judge

CONSENTED AND APPROVED BY:

_____     Date:  5/18/2012
Bharat Adatia, President and Director
20/20 Trading Company, Inc.

_____     Date:  5/18/2012
Bharat Adatia, President and Director
20/20 Precious Metals, Inc.

_____     Date:  5/18/2012
Bharat Adatia, individually

_____     Date:  5-18-12
Sharief D. McDowell, individually

14

_____      Date: 7/16/12

Jennifer E. Smiley, Senior Trial Attorney
Joseph A. Konizeski, Chief Trial Attorney
Counsel for Plaintiff
U.S. Commodity Futures Trading Commission
525 W. Monroe Street, 11th Floor
Chicago, IL 60661
312-596-0700

Approved as to form:

_____      Date: 18 May 2012

Harris L. Kay
Attorney for 20/20 Trading Company, Inc.
and 20/20 Precious Metals, Inc.
Henderson & Lyman
175 West Jackson Boulevard, Suite 240
Chicago, Illinois 60604
312-986-6960

_____      Date: 5/18/2012

Michael S. Winsten
Attorney for 20/20 Trading Company, Inc.
and 20/20 Precious Metals, Inc.
Winsten Law Group
27201 Puerta Real, Suite 465
Mission Viejo, California 92691
949-429-3400

15

**CERTIFICATE OF SERVICE**

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **PLEA AGREEMENT FOR DEFENDANT SHARIEF DEONA MCDOWELL**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows: **SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **November 29, 2022**, in Riverside, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Stephanie Ascencio*
_____
Stephanie Ascencio
Legal Assistant

**ATTACHMENT**

Office of the Federal Public Defender
Charles Eaton – DFPD
3801 University Avenue, Suite 700
Riverside, CA  92501
Charles_Eaton@fd.org